**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Maxa, | No. CV10-8076-PCT-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Countrywide Loans, Inc., et al., | |
| Defendants. | |

Before the Court is Plaintiff's Motion for Preliminary Injunction, Defendants' Motion to Dissolve the Temporary Restraining Order, and Defendants' Motion to Dismiss Amended Complaint. (Docs. 25, 26.) Defendant Mortgage Electronic Registration systems, Inc. ("MERS") joins in Defendants' Motion to Dismiss Amended Complaint by ReconTrust Company, N.A. ("ReconTrust) and Bank of America, N.A. ("Bank of "America"). (Doc. 32.)

**I.     Facts Assumed True**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Generally, material beyond the complaint may not be considered in deciding a Rule 12(b)(6) motion. However, evidence on which the complaint "necessarily relies" may be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's

claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The following facts are assumed to be true for purposes of deciding Defendants' motion to dismiss, but the Court does not decide that they are true.

In June 2005 Plaintiff applied for a loan to purchase real property located at 18021 Spoon Road,[1] Kirkland (Peeples Valley), Arizona 86332-8718 ("Property"). In July 2005 she received a thirty-year loan with a 6% fixed interest rate from Countrywide Home Loans, Inc., in the amount of $111,200.00. Her debt was evidenced by a Note secured by a Deed of Trust. Plaintiff signed the Note, promising to pay to the Lender, in exchange for the loan, $111,200 plus interest in monthly payments. The Note states the Lender is America's Wholesale Lender.[2] The Deed of Trust also states the Lender is America's Wholesale Lender, the Trustee is Fidelity National Title Insurance Company, and MERS is "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns" and the beneficiary under the Deed of Trust. The Deed of Trust further provides that the "Borrower irrevocably grants and conveys to Trustee [the Property], in trust, with power of sale."

At some point Plaintiff stopped making her regular monthly loan payments. BAC Home Loans Servicing, LP sent Plaintiff a "Notice of Intent to Accelerate" dated November 16, 2009, which stated that her loan was in default and the amount required to reinstate her loan then was $1,678.98. The Notice also stated that if her default was not

---

[1] In various documents the street address has been stated as "18021 East Spoon Road," "18021 South Spoon Road," and "18021 Spoon Road." Plaintiff states the road is only two blocks long. Because the Property is further identified by its legal description and there is little likelihood of confusion regarding the location of the Property, the address here uses "18021 Spoon Road."

[2] Plaintiff does not dispute the facts regarding the Note assumed true here. She objects to the photocopy of the Note that Defendants attached to their Motion to Dismiss for the reason that the loan number has been redacted on each page, apparently after she signed it, and the signature page does not have a bar code. She does not contend that the substance of the Note has been altered in the photocopy provided by Defendants.

cured by December 16, 2009, the mortgage payments would be accelerated and foreclosure proceedings initiated. A second "Notice of Intent to Accelerate" dated November 18, 2009, was sent, stating the amount then required to reinstate her loan was $1,712.32, which must be paid by December 18, 2009 to avoid acceleration and foreclosure. In late December 2009, through a representative, Plaintiff contacted Bank of America Home Loans Servicing, L.P. to access records for her loan and to learn the full amount necessary to reinstate her loan.

On January 8, 2010, three documents were filed in Yavapai County. The "Corporation Assignment of Deed of Trust Arizona" states that MERS transfers all beneficial interest in the Deed of Trust to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP. The "Substitution of Trustee Arizona" states that BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP appoints ReconTrust as successor trustee under the Deed of Trust. The "Notice of Trustee's Sale Arizona" states that the Property will be sold pursuant to the power of sale under the Deed of Trust on April 19, 2010.

In late March 2010, a Notice of Trustee's Sale was taped to the door of Plaintiff's home, which indicated that ReconTrust was the current trustee under the Deed of Trust, Bank of America was the current beneficiary, and the Property was to be sold at a trustee's sale on April 19, 2010.

On April 12, 2010, Plaintiff "directed" a letter to Bank of America with facsimile copies to each of the other Defendants, demanding production of a certified copy of Plaintiff's original note on file with Defendants and the full sum necessary to reinstate the loan. On April 13, 2010, Plaintiff learned the trustee's sale had been rescheduled for April 26, 2010. Late Friday afternoon, April 16, 2010, Plaintiff filed a complaint in Yavapai County Superior Court, requesting immediate injunctive relief. On April 19, 2010, Plaintiff's request for a temporary restraining order was denied for failure to satisfy Rule 65(d) notice requirements and because it appeared that the trustee's sale had occurred that morning. On April 22, 2010, upon *ex parte* reconsideration, the Superior

Court judge ordered that Defendants be temporarily restrained from conducting the trustee's sale scheduled for April 26, 2010. Finding that Defendants are adequately secured by the Deed of Trust, the judge did not require Plaintiff to post a bond, absent a showing by Defendants that they are not adequately secured. The temporary restraining order does not expressly state an expiration date, but states that "upon motion of any party, this matter will be set on the Court's expedited calendar for a hearing on the termination of the TRO and/or the issuance of a preliminary injunction." On April 29, 2010, Plaintiff filed a verified Amended Complaint. On May 11, 2010, ReconTrust and Bank of America removed this action to federal district court.

## II. Motion to Dismiss

### A. Legal Standard

A complaint should consist of "clear and concise averments stating which defendants are liable to plaintiffs for which wrongs, based on the evidence." *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

First, the court must identify allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 1951 (2009). The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Id.* at 1949, 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Second, the court must determine whether the factual allegations plausibly suggest an entitlement to relief. *Iqbal*, 129 S. Ct. at 1950, 1951. This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.*

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires allegations of fraud to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

**B.     Analysis**

Plaintiff obtained a 6% fixed interest loan to purchase her home and after a few years did not continue to make her loan payments on time. After receiving notice of her default, she did not make the payment required to reinstate her loan and now wants to stop the trustee's sale. Although she already has amended her complaint previously, she still does not allege that she has been damaged by any of Defendants' actions.

**1.     First Claim: Defendants Lack Standing to Conduct and Enforce a Non-Judicial Foreclosure**

The Amended Complaint alleges that (a) Defendants must demonstrate they are the holder and owner of both the Note and Deed of Trust to have standing, which Plaintiff contends is necessary, to conduct a trustee's sale of the Property; (b) MERS is not a valid beneficiary under the Deed of Trust because it never had ownership and possession of the Note; and (c) MERS therefore could not assign any interest to ReconTrust. The

cornerstone of Plaintiff's legal theory is a paragraph in *Carpenter v. Longan*, 83 U.S. 271, 274 (1872), which states:

> The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.

In that case both the note and the mortgage were assigned to a third party before the note matured. In addition to executing the mortgage on real property, the borrower had delivered to the lender wheat and flour to be sold and proceeds applied to the note. The question was whether the assignee of the note and mortgage was entitled to the full amount on the face of the note plus interest or less the amount of the proceeds from the sale of the wheat and flour—not whether the lender was required to show possession of the note in order to enforce the mortgage. As noted by another district court, *Carpenter* "concerns a loan that had not yet matured and not a home mortgage in default as in the present case." *Nicholson v. OneWest Bank*, No. CV10-0795, 2010 WL 2732325 at *4 n.5 (N.D. Ga. Apr. 20, 2010).

In the present case, foreclosure of the Deed of Trust is governed purely by state statute. As Plaintiff states in her Motion for Preliminary Injunction,

> Arizona's Deed of Trust Act (ARS 33-801, *et seq.*) was enacted to provide a summary, expeditious and inexpensive process of foreclosure. It requires only adherence, albeit strict adherence, to procedure and form – however, <u>it establishes no requirement</u> that a person seeking foreclosure of mortgage *be the holder of the note*.

(Emphasis in the original.)

Under Arizona law, real estate mortgages and deeds of trust are distinct forms of real property liens. *Compare* A.R.S. § 33-701, *et seq.*, with § 33-801, *et seq.* "A mortgage is a two-party instrument between the mortgagor (borrower) and the mortgagee (lender) by which the mortgagor pledges real property as security for the performance of payment or other obligations to the mortgagee." Cammack, Kent E. et al., State Bar of Arizona, *Ins and Outs of Foreclosures*, § 1.1 (2007 ed.). "A deed of trust is a three-party instrument where the trustor (borrower) transfers legal title in real property to the trustee (legal title holder) as security for the performance by the trustor or a third party of

- 6 -

obligations to the beneficiary (lender)." *Id.* at § 1.2. From 1901 to 1971, Arizona statutes prohibited a trustee's exercise of a private power of sale, and a deed of trust was the functional equivalent of a mortgage, but in 1971, the Arizona legislature authorized the exercise of a nonjudicial power of sale under a deed of trust. *Id.*

The Amended Complaint alleges that Defendants have no right to enforce the Note because they are not holders in possession of the Note and do not have the rights of the holder. But a trustee's sale is not an action to enforce the Note. Rather, it is an exercise of the power of sale upon default which the trustor granted to the trustee under the Deed of Trust.

Under Arizona's Deed of Trust Act, a "deed of trust," or "trust deed" conveys trust property to a qualified trustee to secure the performance of a contract or contracts, such as a note or provisions of the deed of trust. A.R.S. §§ 33-801(8), 33-801(4). "[A] power of sale is conferred upon the trustee of a trust deed under which the trust property may be sold . . . after a breach or default in the performance of the contract or contracts, for which the trust property is conveyed as security." A.R.S. § 33-807(A). Thus, the Arizona Deed of Trust Act confers power of sale on the trustee upon default or breach of the contract secured by the trust deed without reference to enforcing or producing a note or other negotiable instrument.

Plaintiff cites no Arizona authority for her contention that, before exercising the power of sale, a trustee or beneficiary must show possession of the original note memorializing the underlying debt or other proof of being the holder of the note identified in the security instrument, and the Court has found none. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986), *modified at* 810 F.2d 1517 (9th Cir. 1987). Although no Arizona court or federal appellate court has decided this issue, many district courts for the District of Arizona have rejected the "show me the note" argument. *See, e.g., Ciardi v. Lending Co.*, No. CV10-0275-PHX-JAT, 2010 WL 2079735 (D. Ariz. May 24, 2010); *Silvas v. GMAC Mortg.,*

*LLC*, No. CV09-0265-PHX-GMS, 2009 WL 4573234 (D. Ariz. Dec. 1, 2009, amended Jan. 5, 2010); *Contreras v. U.S. Bank*, No. CV09-0137-PHX-NVW, 2009 WL 4827016 (D. Ariz. Dec. 15, 2009); *Blau v. America's Servicing Co.*, No. CV08-0773-PHX-MHM, 2009 WL 3174823 (D. Ariz. Sept. 29, 2009); *Goodyke v. BNC Mortg., Inc.*, No. CV09-0074-PHX-MHM, 2009 WL 2971086 (D. Ariz. Sept. 11, 2009); *Garcia v. GMAC Mortg., LLC*, No. CV09-0891-PHX-GMS (D. Ariz. Aug. 31, 2009); *Diessner v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1184 (D. Ariz. 2009); *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178 (D. Ariz. 2009); *but see Castro v. Exec. Tr. Servs., LLC*, No. CV08-2156-PHX-LOA, 2009 WL 438683 at *5 (D. Ariz. Feb. 23, 2009). No authority presented here suggests the Arizona state courts would arrive at a different conclusion.

It is unnecessary to decide whether Defendants satisfy the qualifications of a "person entitled to enforce" an instrument under A.R.S. § 47-3301 because conducting a trustee's sale under power granted by the Deed of Trust is not the same as enforcing an instrument under the Uniform Commercial Code. In the Deed of Trust Plaintiff not only conveyed the power of sale to the trustee, but also agreed to empower MERS, as the lender's nominee, to exercise the lender's rights, including the right to foreclose. To date, Arizona law does not require the trustee or beneficiary to possess the Note in order to exercise the power of sale granted by the Deed of Trust. Therefore, the first claim of the Amended Complaint fails to state a claim upon which relief can be granted, and it cannot be cured by further amendment.

### 2. Second Claim: Fraudulent Misrepresentation

To allege fraudulent misrepresentation, a plaintiff must allege that "the defendant made a false, material representation that he knew was false or was ignorant of its truth, with the intention that the hearer of the representation act on it in a manner reasonably contemplated, that the hearer was ignorant of the representation's falsity, rightfully relied on the truth of the representation, and sustained consequent and proximate damage." *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 610, ¶ 14, 5 P.3d 940, 944 (Ct. App. 2000).

The Amended Complaint alleges that MERS' representation that it is a "beneficiary" under the Deed of Trust is false because it is not the owner and holder of the Note. As discussed above, no Arizona authority has been found that requires a beneficiary under the Deed of Trust to be the owner and holder of the Note or that holds MERS cannot be named as a nominal beneficiary under a deed of trust. It cannot be concluded that MERS knew that representing itself as a "beneficiary" under the Deed of Trust was false. Thus, the second claim of the Amended Complaint also fails to state a claim upon which relief can be granted, and further amendment would be futile.

### 3. Third Claim: Fraud

Under Arizona law,

> A showing of fraud requires (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury. Each element must be supported by sufficient evidence. "Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence."

*Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982) (citations omitted).

The Amended Complaint alleges that Defendants' representation that the sole purpose of the Note was to secure a residential home loan was false and their real purpose was to obtain "various wrongful fees, rebates, refunds, kickbacks, profits and/or gains from each of the parties who participated in this unlawful scheme." First, some of these Defendants did not participate in the loan origination, and Plaintiff has failed to identify who did what with enough particularity to satisfy Fed. R. Civ. P. 9(b). Second, Plaintiff did obtain a loan to purchase her residence, so the alleged misrepresentation can be false only with respect to asserting that providing Plaintiff with a residential home loan was their "sole purpose." Third, if Defendants actually represented that they would not obtain any profit or other benefit from providing Plaintiff with a home loan, Plaintiff had no right to rely on such an incredible representation. Fourth, the Amended Complaint does

not allege any injury that Plaintiff suffered as a result of her reliance on the allegedly false representation. It alleges generalized injury to the state and nation from Defendants' alleged scheme to "create and collect unearned fees, charges and interests by selling highly speculative and risky security instruments unrelated to plaintiff and/or her real property," but it does not allege that Plaintiff's reliance on a false statement caused her any particular injury.

The Amended Complaint further alleges that Countrywide, ReconTrust, and MERS are foreign corporations and, pursuant to A.R.S. § 10-1502, not authorized to maintain a proceeding in any court of Arizona. A.R.S. § 10-1502(A) provides that a foreign corporation transacting business in this state may not maintain a proceeding in any court in this state, but conducting a trustee's sale is not a proceeding in court.

Although the third claim of the Amended Complaint could be amended to identify which Defendants allegedly committed particular fraudulent acts, further amendment would be futile because Plaintiff did receive a residential home loan, it is reasonable for entities involved in loan transactions to earn a profit for their services, and it would have been unreasonable for Plaintiff to rely on any representation that the for-profit entities involved in her loan transaction would receive no benefit from providing their services. The third claim will therefore be dismissed, without leave to amend, for failure to state a claim upon which relief can be granted.

**4.      Fourth Claim:  Deceptive Practices and Fraudulent Inducement**

Under the heading "Deceptive Practices and Fraudulent Inducement," in paragraphs 43 through 53, the Amended Complaint alleges that Countrywide made representations and took actions in the process of attracting and soliciting borrowers, but it does not allege that any of those representations and actions were deceptive or fraudulent, form the basis for a legal cause of action, or caused harm to Plaintiff. The fourth claim of the Amended Complaint does not mention ReconTrust, Bank of America, or MERS, which are the only served Defendants in this lawsuit.

1    Further, Plaintiff did not attempt to defend the fourth claim in her response to the
2    motion to dismiss and therefore has abandoned it. Nevertheless, the Court considers the
3    merits and concludes the fourth claim of the Amended Complaint fails to state a claim
4    upon which relief can be granted and further amendment would be futile.

### 5.  Fifth Claim: Damages for Identity Theft

The fifth claim of the Amended Complaint alleges that Plaintiff is a member of a class of consumers affected by the alleged theft in 2008 by a Countrywide employee of personal information and financial data, which is the basis of a federal multidistrict lawsuit in the Western District of Kentucky. It further alleges that Plaintiff received notice that she could opt out of a proposed settlement agreement, but speculates that in the future she may incur damages exceeding the amount she would have been entitled to recover under the settlement agreement. It does not allege that Plaintiff has incurred any actual damages as a result of the alleged 2008 identity theft, but rather seeks leave to amend the Amended Complaint when she discovers them. Plaintiff's response to the motion to dismiss states that she excluded herself from the settlement class and has preserved her right to sue Countrywide, but does not explain how any of the Defendants are liable for Countrywide's former employee's alleged conduct. The fifth claim of the Amended Complaint, therefore, fails to state a claim upon which relief can be granted, and further amendment would be futile.

### 6.  Sixth Claim: Unconscionable Conduct

The sixth claim of the Amended Complaint alleges that all of the Defendants are liable for "unconscionable conduct" because "Plaintiff was not informed of the sale of her note by the loan officer." It does not allege any legal theory by which any of the Defendants could be held liable for "unconscionable conduct," and none of the served Defendants were involved in the loan origination. Further, the general allegations that the "terms of the Deed of Trust executed by Countrywide are so one-sided as to be abusive and unconscionable," do not provide Defendants with sufficient notice as to which terms were "abusive and unconscionable" and actually caused Plaintiff harm. Therefore, this

claim also fails to state a claim upon which relief can be granted, and further amendment would be futile.

### 7. Seventh Claim: Unjust Enrichment and Civil Conspiracy

The seventh claim of the Amended Complaint alleges that Defendants conspired to commit fraud and "retain the benefits from their actions of charging fees, rebates, kickbacks, profits,...." This claim states nothing more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action" and therefore fails to state a claim upon which relief can be granted. *See Twombly*, 550 U.S. at 555.

### 8. Eighth Claim: Breach of Contract, Failure or Refusal to Reinstate

The eighth claim of the Amended Complaint alleges that the Deed of Trust provides her a right to reinstate after default subject to certain conditions; as of April 26, 2010, she had not received from Defendants the amount required to reinstate; and as of April 26, 2010, she stood "ready, willing and able to fulfill her obligation under paragraph 19" of the Deed of Trust. Paragraph 19 provides, in part:

> **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument. . . . Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred. . . .

In November 2009 Plaintiff had notice of default and the amount of payment required then to reinstate her loan. The Amended Complaint does not allege that Plaintiff tendered payment for reinstatement then or at any time. It alleges that she called Bank of America on April 13, 2010, requesting the amount of payment required to reinstate and that she had not received the information before initiating this lawsuit on April 16, 2010. The Amended Complaint does not allege which Defendants are liable under this claim for relief. It does not allege whether or not Plaintiff received the information and tendered payment five days before the rescheduled date of the trustee's sale, April 26, 2010. It does not allege that any of the Defendants refused her tender or denied her the

- 12 -

information needed to make a tender.  In sum, the Amended Complaint does not allege what any of the Defendants did that breached the Deed of Trust.

In her response to Defendants' motion to dismiss, Plaintiff did not defend her claim for breach of contract and right to reinstate and, therefore, has abandoned it. Nevertheless, the Court decides on the merits that the eighth claim of the Amended Judgment fails to state a claim upon which relief can be granted and further amendment would be futile.

### 9. Ninth Claim: Quiet Title

A quiet title action seeks an equitable ruling that an individual is the rightful owner of real property.  *Chantler v. Wood*, 6 Ariz. App. 134, 138, 430 P.2d 713, 717 (1967).  It necessarily depends on the plaintiff successfully asserting some legal or equitable theory for why he is the rightful owner.  As discussed above, none of the other claims of the Amended Complaint provide any legal or equitable theory under which Plaintiff can be found to be the rightful owner of the Property.  Therefore, the ninth claim of the Amended Complaint fails to state a claim upon which relief can be granted and is not subject to cure by amendment.

### III. Leave to Amend

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).  But, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  As explained above, amendment of any of Plaintiff's claims for relief would be futile.

Most of Plaintiff's claims flow from her reliance on *Carpenter v. Longan*, 83 U.S. 271, 274 (1872), and the theory that a trustee's power of sale granted by a deed of trust cannot be exercised unless the beneficiary holds the note and that securitization of residential loan debt is fraudulent.  As previously discussed, Arizona law does not support Plaintiff's principal theories.

Further, Plaintiff does not identify any compensable damages she has incurred as a direct or foreseeable result of any of the Defendants' actions.  She alleges, generally,

- 13 -

1  injury to the national economy arising from lenders' securitization schemes, adverse
2  economic impact on her small business, personal injury arising from Defendants' use of
3  public TARP funds, mental anguish, and speculative future injury she may incur resulting
4  from possible identity theft that allegedly occurred two years ago. Even if explained in
5  more detail, none of her alleged generalized injuries appears to be connected to any viable
6  legal theory of recovery.

7  Plaintiff does not respond to any of the deficiencies identified by Defendants with
8  specific offers to cure by amendment. She does request leave to amend the Amended
9  Complaint to add "newly discovered" facts about MERS, which apparently would be
10 related to an antitrust claim. However, the facts she would add, even if assumed to be
11 true, do not establish that she has in fact been damaged, only that she "is damaged by
12 MERS' monopolistic practices by being denied the benefit of a competing ERS that
13 would result in lower prices, more favorable terms, public access to the electronic record
14 (now denied), and greater transparency in the mortgage process (presently deliberately
15 opaque)."

16 The Court cannot conceive of any factual allegations Plaintiff could add to the
17 Amended Complaint that would salvage any of her claims and also be consistent with the
18 factual allegations she previously verified. Nowhere does the Amended Complaint
19 suggest that the terms of Plaintiff's 6% fixed interest home loan were unfair, that any
20 specific fees or charges were excessive or unreasonable, or that anything about the loan
21 origination process was improper (other than Countrywide's alleged failure to explain to
22 her that her loan would be assigned). Although Plaintiff quibbles about the redacted
23 photocopies attached to Defendants' motions and contends that a notice was improperly
24 served because it was mailed to her using an address with "East" instead of "South" (or
25 no directional term as in the address given in one of her supporting affidavits), she does
26 not contend that any of the documents are substantively different from those she signed
27 and does not claim that she did not receive actual notice of the trustee's sale.
28

Moreover, the district court's discretion to deny leave to amend a complaint is "especially broad" where the plaintiff already has had one or more opportunities to amend his complaint. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989). "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Exp. Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). Because Plaintiff already has unsuccessfully amended her complaint previously and further amendment would be futile, the Amended Complaint will be dismissed without leave to amend.

**IV. Plaintiff's Motion for Preliminary Injunction and Defendants' Motion to Dissolve Temporary Restraining Order**

To obtain a preliminary injunction, a plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. __, __, 129 S. Ct. 365, 374 (2008). "[T]he less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam). As found above, all of the claims of the Amended Complaint will be dismissed, and Plaintiff has no likelihood of succeeding on the merits. Therefore, Plaintiff's Motion for Preliminary Injunction will be denied and the *ex parte* temporary restraining order issued April 22, 2010, by the Yavapai County Superior Court will be vacated.

IT IS THEREFORE ORDERED that Defendants' Motion to Dissolve the Temporary Restraining Order and Defendants' Motion to Dismiss Amended Complaint. (Docs. 25, 26) are granted, and Plaintiff's Motion for Preliminary Injunction is denied.

IT IS FURTHER ORDERED vacating the *ex parte* temporary restraining order issued April 22, 2010, by the Yavapai County Superior Court in this matter.

IT IS FURTHER ORDERED vacating the hearing on Plaintiff's Motion to Continue Hearing on Preliminary Injunction and Defendant's Motion to Dissolve TRO set for August 13, 2010.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing Plaintiffs' Amended Complaint with prejudice for failure to state a claim upon which relief can be granted. The Clerk is directed to terminate this case.

DATED this 16th day of July, 2010.

_____
Neil V. Wake
United States District Judge